Nancy J. **SUMMER**

v.

Stanley L. **SUMMER.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Feb. 11, 2008 Session.

April 10, 2008.

Permission to Appeal Denied by
Supreme Court Oct. 27, 2008.

Danny C. Garland, Knoxville, Tennessee, for the Appellant, Stanley L. Summer.

Kirk Andrews and Paul Dillard, Maryville, Tennessee, for the Appellee, Nancy J. Summer.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

The issue in this divorce case is whether the trial court erred in its classification of certain assets as marital property. We affirm the trial court's ruling that (1) the parties' guitar collection, the vast majority of which was acquired during the marriage, was marital property; and (2) the marital residence, purchased by the Husband prior to the marriage, was separate property, but the increase in value of the residence during the approximately fifteen-year marriage was marital property,

because of Wife's substantial contributions to the preservation and appreciation of the marital residence by her homemaking efforts.

## I. Background

Stanley L. Summer and Nancy J. Summer were married in October of 1988. No children were born to the marriage. At the time of marriage, Mr. Summer was employed as a pilot for Piedmont Airlines; but very shortly after the marriage, in late 1988, he was grounded by a medical condition that prevented him from piloting commercial airplanes. Mr. Summer took a number of months of accrued sick leave and then was placed on medical disability until his retirement date in 2002. Mr. Summer drew disability payments until he began receiving retirement benefits in May of 2002.

After he stopped working as a commercial pilot, Mr. Summer began pursuing his interest in vintage, rare and semi-rare guitars. He actively bought and sold guitars in an effort to increase his collection, frequently traveling across the country to guitar shows. Although Mr. Summer insisted that his buying and selling of guitars was strictly a "hobby," in reality it became a business, and the Summers made a yearly profit as Mr. Summer sold guitars for more than he paid for them. Mr. Summer named his business "Nancy's Music Box" and actively promoted it through his presence at conventions, music camps and other events, and guitar-related publications. Ms. Summer assisted the business by occasionally traveling with Mr. Summer to guitar shows, preparing and packing up guitars for mailing and taking them to the mail carriers, and cleaning the inside of the guitars. The parties' testimony differs with regard to how extensive Ms. Summer's assistance in the business was; Ms. Summer testified it was fairly extensive, and Mr. Summer portrayed it as relatively small. In addition to helping with the guitar business, Ms. Summer worked as a homemaker during the marriage, cleaning and maintaining the marital residence and cooking the parties' meals, among other things.

During the final years of the parties' marriage, Ms. Summer spent a considerable amount of time in Columbia, South Carolina taking care of her father, who was not in good health and required living assistance, which apparently added stress to the parties' relationship. Ms. Summer filed this divorce action in February of 2003; the issues before the trial court were classification of the parties' property, division of the marital estate, and Ms. Summer's request for spousal support. After hearing six days of proof in a hearing that spanned nearly two years, the trial court classified the guitar collection as marital property and the marital residence as Mr. Summer's separate property. The trial court held that the increase in value of the marital residence during the marriage was marital property, although it coupled this ruling with the finding that Ms. Summer had not "made any significant or material contribution to the marital residence." The trial court awarded Mr. Summer approximately 69.1% of the marital estate, valued at $658,042, and Ms. Summer 30.9% of the marital estate, valued at $283,175. The trial court further awarded Ms. Summer $30,000 of her attorney's fees as alimony in solido but did not award her any other spousal support.

## II. Issues Presented

Mr. Summer appeals, raising the following issues:

1. Whether the trial court erred in classifying the guitar collection/inventory as marital property.

2. Whether the trial court erred in classifying the increase in value of the marital residence during the parties' marriage as marital property.

## III. Analysis

### A. Standard of Review

Our standard of review was recently stated by the Supreme Court in *Keyt v. Keyt*, 244 S.W.3d 321 (Tenn.2007), wherein the Court addressed similar issues of property classification and division in a divorce proceeding:

This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn.Ct. App.1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn.Ct. App.1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn.Ct.App.2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744–45 (Tenn.2002).

*Keyt*, 244 S.W.3d at 327 (footnote omitted).

### B. Property Classification as Marital or Separate

After the trial court has identified all property interests at issue in a divorce proceeding, the next step is to classify the property as either marital or separate. *Keyt*, 244 S.W.3d at 328; *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). This classification is an important threshold matter because courts do not have the authority to make a distribution of separate property. *Id.* The classification of property at issue as either marital or separate is governed by statute, Tenn. Code Ann. § 36–4–121, which defines "marital property" to include the following:

(1)(A) [A]ll real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce....

(B) [I]ncome from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

Tenn.Code Ann. § 36–4–121(b)(1)(A), (B). "Separate property," on the other hand, is exclusively owned by the husband or the wife and is defined by statute as follows:

(2)(A) All real and personal property owned by a spouse before marriage ...;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1) . . . .

Tenn.Code Ann. § 36–4–121(b)(2)(A)–(C).

### 1. Classification of the Guitar Collection

■ Mr. Summer takes issue with the trial court's classification of the guitar collection as marital property. At the time of marriage, Mr. Summer owned approximately three guitars. As noted, he became actively involved in buying and selling guitars after his medical disability grounded him from piloting commercial aircraft, which occurred shortly after his marriage to Ms. Summer. At the time of divorce the guitar collection consisted of approximately one hundred guitars, valued by the trial court at $725,850.

■ It is undisputed that the guitar collection is personal property "acquired by either or both spouses during the course of the marriage." Tenn.Code Ann. § 36–4–121(b)(1)(A). In keeping with the plain language of the statute defining marital property, we have stated that generally speaking, "property that is acquired during a marriage by either or both spouses and still owned by either or both spouses when the divorce is granted is classified as marital property and is thus subject to equitable division." *Takeda v. Takeda,* No. E2006–02499–COA–R3–CV, 2007 WL 4374036, at *2 (Tenn. Ct.App. E.S., filed Dec. 17, 2007); *Stinson v. Stinson,* 161 S.W.3d 438, 443 (Tenn.Ct.App.2004). Consequently, "[a] party asserting that an asset acquired during the marriage is separate property has the burden of proving by a preponderance of the evidence that the asset is separate property." *McFarland v. McFarland,* No. M2005–01260–COA–R3–CV, 2007 WL 2254576, at *5 (Tenn. Ct.App. M.S., filed Aug. 6, 2007). As the trial court found, Mr. Summer did not meet this burden in the present case.

Mr. Summer testified that the money he used to make his initial purchases of guitars to start the collection came from the premarital sales of certain of his separately owned assets. He did not specify, however, how much of this money was used to buy guitars, how many guitars, or which (if any) of the guitars in the collection were purchased with money from sales of his separate assets. As time passed, Mr. Summer sold guitars, usually for more than he had paid for them, and the guitar collection became more of a business. Mr. Summer acquired a business license for his guitar business, which he named "Nancy's Music Box." The trial court found that "the guitar business yielded a profit, pursuant to Mr. Summer's own record of the value of same as he traded up to more expensive and more valuable guitars." The trial court also found that "[b]oth Mr. and Mrs. Summer made contributions to their guitar business," and the evidence in the record does not preponderate against these findings. Mr. Summer's own handwritten records indicate that between 1994 and 2002 the parties made a profit totaling $377,130 from the sale of guitars, although in his testimony Mr. Summers adamantly denied ever making such a profit. Most of the money made from the sale of guitars went toward the purchase of other, usually more expensive, guitars.

Additionally, Mr. Summer admitted that approximately 30 of the guitars in the collection at the time of the divorce hearing had been purchased with funds from the parties' joint checking account. Thus, while it appears that Mr. Summer initially bought some guitars with his separate funds, it is not clear whether any of those

guitars remained in the collection at the time of the divorce petition. Under these circumstances, the entire collection is properly classified as marital property pursuant to the doctrine of commingling, as described by the Supreme Court as follows:

> Separate property becomes marital property by commingling if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur.

*Langschmidt v. Langschmidt,* 81 S.W.3d 741, 747 (Tenn.2002) (brackets in original omitted). Under the proof presented in the record before us, any guitars purchased with money from Mr. Summer's separate assets have been inextricably mingled with marital property, *i.e,* the great majority of guitars purchased with funds acquired during the course of the marriage. As stated, Mr. Summer provided no evidence identifying and separating any particular guitar from the collection as being purchased with premarital separate assets. We, therefore, affirm the trial court's ruling that the entire guitar collection is marital property, subject to equitable division.

Mr. Summer also argues that the trial court erred in its valuation of the guitar collection because the court "failed to include all of the expenses incurred in [the] acquisition" of the guitars. We find no support for this argument in either the facts presented or the law of Tennessee. The trial court is not required to "look behind" every unencumbered asset of the marital estate in an inquiry as to how much was paid for each item, as Mr. Summer argues. The trial court's valuation of the guitar collection was amply supported by expert testimony presented by Ms. Summer and largely undisputed at trial by Mr. Summer. The trial court's valuation of the guitar collection, and its division of the collection,[1] is affirmed.

## 2. Classification of the Appreciation in Value of Marital Residence

■ The parties lived in the marital residence in Blount County, which was owned unencumbered by Mr. Summer at the time of marriage, for the duration of their marriage. The trial court found the marital residence, valued by Mr. Summer's expert appraiser at $475,000 as of February 2003, to be his separate property. The trial court further found that the increase in value of the marital residence during the marriage, which the court valued at $200,000, was marital property, and awarded Ms. Summer $60,000 of this appreciation. The trial court found that "the record is void of any significant contribution to the marital residence made by Mrs. Summer," a finding that is inconsistent with the trial court's classification of the marital residence's increase in value as marital property, and a finding that we hold is contrary to the preponderance of the evidence presented.

An increase in value during the marriage of property determined to be separate property will be classified as marital property if "each party substantially contributed to its preservation and appreciation." Tenn.Code Ann. § 36–4–121(b)(1)(B); *Keyt,* 244 S.W.3d at 328–29. As the Supreme Court stated in *Keyt,* the non-owner spouse's contributions must be

---

1. Mr. Summer has not argued in the alternative to his issues presented that the division of the marital estate was inequitable. The trial court awarded the entire guitar collection to Mr. Summer and ordered him to pay Ms. Summer her share of the collection's value, which the court found to be $175,850, or approximately 24 percent.

"real and significant," and also linked to the appreciation in value of the separate property:

> [I]ncreases in the value of separate property during a marriage will not be considered marital property unless both parties "substantially contributed" to the appreciation in the value of the property. Tenn.Code Ann. § 36–4–121(b)(1)(B); *Harrison v. Harrison,* 912 S.W.2d 124, 127 (Tenn.1995). While these contributions may be either "direct" or "indirect," Tenn.Code Ann. § 36–4–121(b)(1)(D), they must satisfy two requirements. *McFarland v. McFarland,* No. M2005–01260–COA–R3–CV, 2007 WL 2254576, at *6 (Tenn. Ct.App. Aug.6, 2007). First, the contributions must be "real and significant." *Id.; Brown* [*v. Brown*], 913 S.W.2d [163, 167 (Tenn.Ct.App.1994) ]. "Second, there must be some link between the spouses' contributions and the appreciation in the value of the separate property." *McFarland,* 2007 WL 2254576, at *6; *Langschmidt,* 81 S.W.3d at 746. Whether a spouse made a "substantial contribution" to the preservation and appreciation of separate property is a question of fact. *Sherrill v. Sherrill,* 831 S.W.2d 293, 295 (Tenn.Ct.App.1992).

*Keyt,* 244 S.W.3d at 328–29.

In the present case, Ms. Summer testified that she did not work outside the home during the marriage at Mr. Summer's behest. Ms. Summer testified that she worked as homemaker, cleaning and maintaining the residence, cooking their meals and cleaning up after meals, doing laundry, taking care of the parties' five dogs, helping with yard and gardening work, and canning and freezing the produce from their garden. Additionally, Ms. Summer testified regarding her assistance with the guitar business, that she traveled with Mr. Summer on occasion to guitar shows, helping load and unload the inventory and display stands from the van; helped clean the guitars and the guitar storage room in the basement of the marital residence; and packed up and prepared guitars and cases to be mailed to buyers. Mr. Summer sought to downplay and minimize Ms. Summer's efforts during the marriage, but generally did not dispute that she made such efforts, both in the housekeeping/homemaking arena and the business arena.

We find that the evidence preponderates in favor of the conclusion that Ms. Summer made real and substantial contributions to the preservation and appreciation of the marital residence during the approximately fifteen years she worked as a homemaker. This conclusion is supported by applicable statute, which specifically provides among other things that " 'substantial contribution' may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker." Tenn.Code Ann. § 36–4–121(b)(1)(D). The Supreme Court noted in the *Langschmidt* decision that "appreciation in value of the marital residence (titled separately in the name of one spouse prior to and during the marriage) is marital property once it is shown that the other spouse substantially contributed to the home's preservation and appreciation *as a result of efforts made as a homemaker.* ... or other such contributions." *Langschmidt,* 81 S.W.3d at 746 (emphasis added).

In *Silvey v. Silvey,* No. E2003–00586–COA–R3–CV, 2004 WL 508481 (Tenn. Ct. App. E.S., filed Mar. 16, 2004), this court was presented with the same issue of classifying the increase in value of a marital residence that was the husband's separate property and concluded that the wife's homemaking efforts were substantial and causally related to the residence's increase in value during the marriage:

[T]here must be some meaningful relationship between the actions of the non-owner spouse and the property in question in order for the increase in the value of such property to be categorized as marital property. And while a wife's efforts as homemaker do not bear such a relationship to the appreciation in the value of financial accounts or rental property in another state, such efforts may be causally related to a post-marriage increase in value of a residence owned by the husband at the time of marriage. The record before us shows that at the original trial Ms. Silvey testified that she cleaned and maintained the home place. We cannot say that the evidence taken as a whole preponderates against a finding that she substantially contributed to the preservation and appreciation of the marital residence and that the increase in its value during the marriage is appropriately categorized as marital property.

*Silvey*, 2004 WL 508481 at *6.

Similarly to our decision in *Silvey*, and under the same rationale, we conclude that the trial court did not err in holding that the appreciation in value of the marital residence during the marriage was marital property. Although we hold the evidence preponderates against the trial court's finding of no substantial contribution by Ms. Summer, "[i]n the final analysis, the appropriateness of the trial court's division depends on its results." *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn.Ct. App.2005). We will affirm the trial court's judgment "if it reached the correct result even if we disagree with the reasoning employed by the trial court to arrive at that result." *Denton v. Denton*, 33 S.W.3d 229, 232 (Tenn.Ct.App.2000).

### IV. Conclusion

The judgment of the trial court classifying the guitar collection and the apprecia-tion in value of the martial residence during the marriage as marital property is affirmed. Costs on appeal are assessed to the Appellant, Stanley L. Summer.