IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 15, 2010 Session

# FERREL C. GLOVER v. CELIA ANN CLEVENGER GLOVER

**Direct Appeal from the General Sessions Court for Hardin County**
**No. 7009     James Y. Ross, Judge, Sitting By Interchange**

───────────────

**No. W2010-00331-COA-R3-CV - Filed July 30, 2010**

───────────────

After the parties' brief marriage, the trial court awarded Wife $25,000.00 for equity allegedly accrued in the marital residence during the marriage. Finding no contributions by Wife to support a transmutation from separate to marital property, we reverse.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the General Sessions Court Reversed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J. and J. STEVEN STAFFORD, J., joined.

Jason R. Creasy, Dyersburg, Tennessee, for the appellant, Ferrel C. Glover

Curtis F. Hopper, Savannah, Tennessee, for the appellee, Celia Ann Clevenger Glover

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

Ferrel C. Glover ("Husband") purchased a residence at 350 Sandpiper Point, Counce, Tennessee, ("the marital residence") in 2001 for $255,000.00 In October 2006, he married Celia Ann Clevenger Glover ("Wife").  Husband filed for divorce on October 18, 2008, and Wife filed both an answer and a counter-complaint for divorce on April 20, 2009.

Following a trial, the trial court entered a final decree of divorce on December 11, 2009, granting the parties' requests for an absolute divorce, ordering Husband to pay $2,300 alimony in solido, and awarding Husband the marital residence, but requiring him to pay Wife $25,000.00 for equity allegedly accrued in the marital residence during the parties' marriage.  Husband timely appealed.

### II.  ISSUES PRESENTED

Husband presents the following issues for review:

1. Whether the trial court erred in determining that there was a marital estate to divide absent any proof by Appellee that Appellant's separate property had become marital property;
2. Whether the trial court erred in determining the amount of any increase in equity in Appellant's residence during the parties' marriage; and
3. Whether the court erred in dividing the alleged marital property by not returning the parties to their status prior to divorce since the parties' marriage was of a very short duration.

For the following reasons, we reverse the trial court's award of $25,000.00 to Wife.

### III.  STANDARD OF REVIEW

We must give great weight to the trial court's decisions in dividing marital assets, and "'we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'"  ***Keyt v. Keyt****,* 244 S.W.3d 321, 327 (Tenn. 2007) (quoting *Herrera v. Herrera,* 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)).  "Questions regarding the classification of property as either marital or separate, as opposed to questions involving the

appropriateness of the division of the marital estate, are inherently factual." ***Owens v. Owens,*** 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007) (citing *Current v. Current,* No. M2004-02678-COA-R3-CV, 2006 WL 656791, at *1 (Tenn. Ct. App. Mar. 15, 2006); *Bilyeu v. Bilyeu,* 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. June 12, 2006); 19 W. Walton Garrett, *Tennessee Practice: Tennessee Divorce, Alimony and Child Custody* § 15:3, at 324 (rev. ed. 2004)). Therefore, we review the trial court's classification of property with a presumption of correctness and will not overturn those factual findings unless the evidence preponderates against them. ***See Owens,*** 241 S.W.3d at 485; **Tenn. R. App. P. 13(d) (2009)**. For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Watson v. Watson,*** 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. ***Union Carbide Corp. v. Huddleston,*** 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.,* 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

"Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court." ***Keyt,*** 244 S.W.3d at 327 (citing *Roberts v. Roberts,* 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991)). "Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings." ***Id.*** (citing *In re M.L.P.,* 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007)).

## IV.   DISCUSSION

At the outset, we must address the inappropriate procedure utilized by the trial court in this case. After direct and cross-examination of Husband's former wife and direct examination of Husband, the trial court interjected with the following statements:

> I mean, gentlemen, here's where I am right now. I mean, this is a marriage of short duration. You know, we've got very little assets to dispose of. Primarily, it's just the house.
>
>     . . . .
>
> And the only thing that I would have to make a different adjudication about would be the equity that's accrued in this house during the course of the marriage.

It appears that there is some because at the time he bought the house he paid two-fifty-five and he said he paid fifty-three down maybe fifty-five. Giving him the benefit of the doubt that was a [] 200,000 debt back in '01. That means that he's been probably paying in the neighborhood of $25,000 a year on that debt. That indicates to me that during the course of the marriage, there was $50,000 worth of debt paid down. $50,000 worth of equity to be divided.

Now that's where I am right now. . . .

. . . .

I'm just telling you the way I would rule right now, so you know where you need to focus your cross if you want to do something different, that's where I would be right now if I were to rule.

Following this exchange, Wife's attorney chose to forego cross-examining Husband, and both sides rested their cases. Wife presented no proof.

While the trial judge may have intended only to help the lawyers direct their questioning of witnesses, the above-quoted statements could be interpreted as indicating that the trial judge had already made up his mind on issues such as the amount of equity to be divided between the parties. Trial courts must be circumspect about using language which could be interpreted as an indication that a decision has been reached without hearing all of the proof. Short-cuts such as deciding disputed issues of fact after opening statements, after the direct testimony of one witness, or without all of the testimony that is pertinent to such issues is improper and creates the appearance that the court is not impartial. The parties are entitled to a fair and impartial hearing based on all of the evidence produced in court.

Although the trial court did not prevent the parties from presenting further proof, its statements certainly influenced Wife's decision to forego presenting her own evidence, believing the trial court was inclined to rule in her favor. This lack of proof presents difficulties on appeal, as the record contains limited testimony by which to review the trial court's decision. However, because Wife has "stipulated to the facts as testified by the husband[,]" we do not remand for further proof, but instead determine whether the evidence presented supports the trial court's conclusion.

Tennessee is a "dual property" state, as our divorce statutes distinguish between marital and separate property. *See Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). The first step a trial court must take in dividing a marital estate is to identify all of the

parties' property interests. ***Owens***, 241 S.W.3d at 485 (citing 19 W. Walton Garrett, *Tennessee Practice: Tennessee Divorce, Alimony and Child Custody* § 15:2, at 321 (rev. ed. 2004)). Next, the trial court must classify the identified property as either marital or separate. ***Id.*** (citing *Flannary v. Flannary,* 121 S.W.3d 647, 650 (Tenn. 2003); *Conley v. Conley,* 181 S.W.3d 692, 700 (Tenn. Ct. App. 2005); *Anderton v. Anderton,* 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998)). "This classification is an important threshold matter because courts do not have the authority to make a distribution of separate property." ***Summer v. Summer,*** No. E2007-01003-COA-R3-CV, 2008 WL 990454, at *2 (Tenn. Ct. App. Apr. 10, 2008), *perm. app. denied* (Tenn. Oct. 27, 2008) (citing *Keyt,* 244 S.W.2d at 328; *Flannary,* 121 S.W.3d at 650).

Tennessee Code Annotated section 36-4-121 governs the classification of property as marital or separate, and defines "marital property" to include:

> (b)(1)(A) . . . all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . .
>
> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . .
>
> . . . .
>
> (D) "[S]ubstantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

Tennessee Code Annotated section 36-4-121(b)(2) further defines "separate property" as

> (A) All real and personal property owned by a spouse before marriage . . . ;
>
> (B) Property acquired in exchange for property acquired before the marriage;
>
> (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1)[.]

Thus, our statutes provide that "[a]n increase in value during the marriage of property determined to be separate property will be classified as marital property if 'each party substantially contributed to its preservation and appreciation.'" *Summer*, 2008 WL 990454, at *5 (citing Tenn. Code Ann. § 36-4-121(b)(1)(B); *Keyt,* 244 S.W.3d at 328-29). However, our Supreme Court clearly expressed in *Harrison v. Harrison,* 912 S.W.2d 124, 127 (Tenn.1995), that "[t]he statute does not permit the conclusion that *any* increase in value during marriage constitutes marital property. The increase in value constitutes marital property only when the spouse has substantially contributed to its preservation and appreciation." To qualify as "substantial," a contribution must satisfy two requirements. *Summer,* 2008 WL 990454, at *5 (citing *Keyt,* 244 S.W.3d at 328-39). "First, the contributions must be 'real and significant.'" *Id.* (quoting *Keyt,* 244 S .W.3d at 328-29). "Second, there must be some link between the spouses' contributions and the appreciation in the value of the separate property." *Id.* (quoting *Keyt,* 244 S.W.3d at 328-29).

In the final decree of divorce, the trial court placed a current value of $300,000.00 on the marital residence, and found that "at least $50,000.00" in equity had accrued during the parties' marriage. Therefore, it ordered Husband to pay Wife $25,000.00 as "her portion of said equity." Orally, the trial court implied that Wife's contributions to such equity were irrelevant:

> [Wife's attorney]: [Wife] contributed to this equity in the house without question.

> The Court: Well, I don't think it matters. It occurred – money earned during the marriage is marital money. So any equity that he accumulated that two years is half hers.

As we stated above, the testimony of only two witnesses was presented in this case. On appeal, Wife concedes that "she stipulated to the facts as testified by the husband." Therefore, we consider whether the evidence, as presented by Husband, preponderates against the trial court's classification of property.

At trial, Husband testified that he purchased the marital residence in 2001 for $255,000.00, paying $53,000.00 or $63,000.00 down. He claimed that at the time of the marriage in 2006, the marital residence was valued at $300,000.00, and that the value remained the same at the time of trial. He stated that he currently owed $60,000.00 plus interest on the home, but that he was unsure how much was owed at the time of the marriage. However, regarding the mortgage payment, he claimed that he "tried to pay three or four or

$5,000 plus the interest every six months."

The trial court, in finding a $50,000.00 increase in equity during the marriage, apparently relied upon Husband's statement that he "put about $50,000 in [the home]."

[The Court]: You bought the house in '01 but I want to know what you think your house was worth in '06 when you got married?  If you were going to sell it, what would be a fair price?  '06 when you got it?

[Husband]:  In '06?

[The Court]: Huh-huh.

[Husband]:  Well, I put about $50,000 in it.

[The Court]: Well, I want to know what you think you can get for it?

[Husband]:  About 300,000 I guess.

[The Court]: You think it was worth 300,000 in '06?

[Husband]:  Well, after I put 50,000 in it.  I give 250, so I guess.

Contextually, it is clear that if the home was valued at $300,000 at the time of the marriage, based on $50,000 worth of improvements, these improvements must have been made prior to the marriage.  Moreover, Husband further testified that he made "substantial improvements" to the home prior to the marriage, but that no improvements beyond "general maintenance" were made after the marriage.

Husband also testified about Wife's contributions, or lack thereof.  He claimed that she "started out as keeping [his] house[, but that] she got so lazy, [that he] had to hire somebody to do the house."  According to Husband, in 2007 and 2008, Wife worked for Husband, a professional gambler, keeping his books and paying his bills, earning from $100.00 to $300.00 per week.  In 2008, she also made and sold crafts, and worked for her aunt earning $10.00 per hour. However, Husband testified that Wife "spent every penny she made on drugs[,]" even stealing money from him while he slept.  He further testified that Wife "never brought any groceries or [any]thing[,]" nor did she make any monetary contributions towards the mortgage payment or any household bills.

We find that the trial court misapprehended Husband's testimony regarding the equity accrued during the marriage.  Based on Husband's testimony that he "tried to pay three or four or $5,000 plus the interest every six months[,]" it appears that a maximum of $35,000.00

equity was built during the marriage.[1]  However, the accrual of equity, alone, is not enough to warrant an award to Wife, as the trial court suggests.  As we stated above, the increased value, or in this case equity, in the marital residence may become marital property if both parties "substantially contributed to its preservation and appreciation."  **Tenn. Code Ann. § 36-4-121 (b)(1)(B)**.  While contributions may be either direct or indirect, **Tenn. Code Ann. § 36-4-121(b)(1)(D)**, such contributions must satisfy two requirements.  *Keyt*, 244 S.W.3d at 329 (citing *McFarland v. McFarland*, No. M2005-01260-COA-R3-CV, 2007 WL 2254576, at *6 (Tenn. Ct. App. Aug. 6, 2007)).  The contributions must be "real and significant" and "there must be some link between the spouses' contributions and the appreciation in the value of the separate property. *Id.* (quoting *McFarland*, 2007 WL 2254576, at *6).  We find that neither requirement has been satisfied.  Based on Husband's testimony, to which Wife stipulated, Wife, at most, contributed to the household by keeping Husband's books and paying his bills.  Again, Husband testified that her wages were not spent on the marital residence, and there is no evidence to suggest that Husband paid Wife a lesser amount than he would another bookkeeper, such that he was able to expend the savings on the marital residence.  Accordingly, we reverse the trial court's award of $25,000.00 to Wife.

## V.  CONCLUSION

For the aforementioned reasons, we reverse the trial court's award of $25,000.00 to Wife.  Costs of this appeal are taxed to Appellee, Celia Ann Clevenger Glover, for which execution may issue if necessary.

ALAN E. HIGHERS, P.J., W.S.

---

[1]This calculation is based on $5,000.00 principal payments in October 2006, April and October 2007, April  and October 2008, and April and October 2009.