IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 4, 2023

## JESSICA M. AMARINO v. JARONE AMARINO

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-DI-21-643       Ben Dean, Chancellor**

_____

**No. M2023-00340-COA-R3-CV**

_____

In this divorce case, Husband/Appellant appeals the trial court's order: (1) awarding a Toyota 4-Runner to Wife/Appellee; (2) dividing the remaining debt on the vehicle between the parties; and (3) awarding Wife one-half of the attorney's fees she incurred in the trial court. We reverse the trial court's conclusion that the 4-Runner was Wife's separate property and conclude that it was transmuted into marital property. We affirm the remainder of the trial court's order. Wife's request for appellate attorney's fees is granted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed in Part; Affirmed in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and THOMAS R. FRIERSON, II, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Jarone Amarino.[1]

Christopher J. Pittman, Clarksville, Tennessee, for the appellee, Jessica M. Amarino.

_____

[1] Husband was represented by a different attorney at trial.

# MEMORANDUM OPINION[2]

## I. Background

Appellant Jarone Amarino ("Husband") and Appellee Jessica Amarino ("Wife") met and began dating while both parties lived in Hawaii. During the parties' relationship, Husband, who is in the United States Army, moved to Clarksville, Tennessee. The parties maintained a three-year long-distance relationship with Husband in Tennessee and Wife remaining in Hawaii. During this time, Wife ended the relationship when she discovered Husband was unfaithful. The parties reconciled when Husband flew to Hawaii and swore his commitment to Wife. Thereafter, Wife moved to Tennessee. In 2018, Wife became pregnant with the parties' child.[3] One week after discovering her pregnancy, Wife became aware that Husband had had another affair. In March 2019, the parties' daughter was born. Thereafter, Wife became aware of Husband's additional affairs and ended the relationship again. After the relationship ended, Husband apologized to Wife for his conduct and made certain promises to her if she would agree to a reconciliation.

In May 2021, Husband flew to Virginia, where he purchased a new Toyota 4-Runner (the "4-Runner"). Husband made a down payment on the vehicle and financed the balance of the purchase price. Husband drove the vehicle back to Tennessee and asked Wife to marry him. Husband stated that he made this gesture to give Wife "safety and security, to win her back, and to fix [their] family and get everything back together." On May 26, 2021, the parties married. In June 2021, Husband was deployed overseas.

The marriage was short-lived. On September 24, 2021, Wife filed a complaint for divorce in the Montgomery County Chancery Court ("trial court") alleging irreconcilable differences and inappropriate marital conduct. On January 11, 2022, Husband filed an answer, admitting irreconcilable differences but denying inappropriate marital conduct. During the divorce proceedings, Wife discovered that Husband had been unfaithful again in August 2021, while he was deployed.

On November 28, 2022, the trial court heard the divorce case. On February 7, 2023, the trial court entered the final decree of divorce. Relevant here, the trial court ordered that: (1) the 4-Runner was a gift from Husband to Wife, that it was Wife's separate property, and that Wife was the sole owner of the vehicle; (2) the remaining indebtedness

---

[2] Rule 10 of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[3] The issues in this appeal do not concern the child.

on the 4-Runner was a marital debt; and (3) it was equitable for each party to be responsible for one-half of the monthly payments on the vehicle until the debt was paid in full. The trial court also awarded Wife $4,387.50, which was one-half of her incurred attorney's fees. Husband filed a timely appeal.

## II. Issues

Husband raises one issue for this Court's review, as stated in his brief:

The Trial Court abused its discretion in awarding a brand-new Toyota 4-Runner to [Wife], but requiring [Husband] to pay half of the $900.00 per month five (5) year car note, plus attorney[']s fees, in a marriage that lasted only four (4) months before Appellee filed for divorce.

As Appellee, Wife raises as an additional issue whether she should be awarded attorney's fees incurred in this appeal.

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

## IV. Analysis

### A. Toyota 4-Runner

### 1. Classification of Vehicle

"Tennessee is a 'dual property' state, as our divorce statutes distinguish between marital and separate property." ***Glover v. Glover***, No. W2010-00331-COA-R3-CV, 2010 WL 2977922, at *3 (Tenn. Ct. App. July 30, 2010) (citing ***Batson v. Batson***, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988)). Accordingly, a trial court's classification of assets as either marital or separate is "an important threshold matter because courts do not have the authority to make a distribution of separate property." ***Summer v. Summer***, 296 S.W.3d 57, 60 (Tenn. Ct. App. 2008). Whether property is marital or separate is an inherently factual question, thus, we review a trial court's classification of property in a divorce *de novo* with a presumption of correctness unless the evidence preponderates against it. ***Hardin v. Hardin***, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983); Tenn. R. App. P. 13(d).

Tennessee Code Annotated section 36-4-121 governs a court's: (1) classification of property as either marital or separate; and (2) equitable division of the marital estate. The Tennessee General Assembly has amended this statute since Wife filed the complaint for divorce on September 24, 2021. We note that the relevant iteration of the statute in this appeal is the July 2017 through March 2022 version, which was in place at the time Wife filed the complaint. At that time, Tennessee Code Annotated section 36-4-121(b)(1)(A) defined "marital property," in relevant part as "all real and personal property . . . acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" Tenn. Code Ann. § 36-4-121(b)(1)(A). "Separate property" was defined, in relevant part, as "[a]ll real and personal property owned by a spouse before marriage[,]" Tenn. Code Ann. § 36-4-121(b)(2)(A), as well as "[p]roperty acquired by a spouse at any time by gift[.]" Tenn. Code Ann. § 36-4-121(b)(2)(D). Importantly, there are instances where the separate property of a spouse becomes part of the marital estate "due to the parties' treatment of the separate property." *Eldridge v. Eldridge*, 137 S.W.3d 1, 13 (Tenn. Ct. App. 2002). This Court has previously explained that transmutation "occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property." *Id.* (quoting *Batson*, 769 S.W.2d at 858).

It is undisputed that Husband purchased and financed the 4-Runner prior to the parties' marriage. The parties dispute whether Husband gifted the vehicle to Wife, making it her personal property prior to marriage, *i.e.,* her separate property. "A gift is a 'voluntary transfer of property to another made gratuitously and without consideration.'" *Long v. Long*, 642 S.W.3d 803, 821 (Tenn. Ct. App. 2021) (quoting *Dunlap v. Dunlap*, 996 S.W.2d 803, 816 (Tenn. Ct. App. 1998) (quoting Black's Law Dictionary 619 (5th ed. 1979))). As the party asserting that the 4-Runner was a gift, Wife had the burden at trial of proving two essential elements by clear and convincing evidence: (1) Husband's intent to make a present gift of the vehicle; and (2) Husband's delivery of the vehicle to Wife and his complete surrender of dominion and control over it. *Trezevant v. Trezevant*, 568 S.W.3d 595, 615 (Tenn. Ct. App. 2018) (citing *Hansel v. Hansel*, 939 S.W.2d 110, 112 (Tenn. Ct. App. 1997); *Brewer v. Brewer*, No. M2010-00768-COA-R3-CV, 2011 WL 532267 at *3 (Tenn. Ct. App. Feb. 14, 2011)). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts . . . and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (internal citations omitted). With the foregoing in mind, we turn to the evidence.

At trial, Wife argued that Husband gifted her the 4-Runner to "win her back" and to atone for his indiscretions, *see supra*. To show Husband's intent to gift Wife the vehicle, Wife produced certain entries from Husband's journal. These excerpts were entered into evidence as trial exhibits 2 and 3. Relevant here, exhibit 3 shows a journal entry from May 30, 2020, when Husband and Wife were not in a relationship, wherein Husband wrote:

I give you my word on the following: I will never cheat on you. Within the next year I will ask you to marry me. If you accept, I will marry you anywhere on the planet. . . . You will have a white 4-runner before our next child is born.

In his testimony, Husband acknowledged that he wrote the entry and that it evidenced his mindset in 2020.

As further evidence, Wife presented a video Husband recorded shortly after he proposed to Wife. This recording was entered into evidence as trial exhibit 4. It appears that Husband recorded this video describing the parties' engagement to send to Wife's family and friends. In the video, Husband states:

. . . I had one more . . . trick up my sleeve for her … things are coming out of my pocket . . . she's got this . . . Range Rover that is tiny . . . she wants this 4-Runner . . . so . . . [I said] 'Are you still looking at that used 4-Runner with all the miles' [saying] 'is it exactly what you want?' kind of put that seed in her head. And I was like 'well, if you want to grow this family, you are going to need what you want,' and then I took the keys out of my pocket and gave her the keys to her brand new . . . 2021 TRD Pro, which is like her dream car for the family . . . So that's what I told [Wife] to give her safety and security, to win her back, and to fix our family and get everything back together.

In his testimony, Husband admitted he recorded the video.

Husband testified that his intent in purchasing the 4-Runner was so the parties could have a family vehicle, to-wit:

I wanted to be with Jess for the rest of my life. She was my best friend. We have an amazing daughter together. I wanted to have more kids with her. I wanted us to have a bigger vehicle. She had a small little SUV that could barely fit my daughter and her two dogs, and I knew if this was going to work out and we were going to have an expanding, growing family, we would need a bigger vehicle. I've always been into Toyotas, so has Jess. She had a 4-Runner; I had a 4-Runner, and it just seemed like a good fit, and the intent was that to be like a family road trip vehicle. I wanted to take the family camping and off-roading.

Husband further testified that the 4-Runner was titled in his name only and that he had made every payment on it since he purchased it in May 2021. The record also shows that the car was registered in Husband's name, that Husband paid for the initial registration fee, and that the car was under his insurance until Wife filed for divorce. At that time, Wife

paid for the registration and placed the vehicle on her automobile insurance. However, the vehicle remained registered to Husband at all times.

On this Court's review, the evidence preponderates against the trial court's finding that Husband gifted the 4-Runner to Wife. Rather, the evidence shows that Husband gifted the 4-Runner to the marital estate. Although the vehicle remained titled and registered in Husband's name, Husband used marital funds to pay for the monthly debt obligation on the vehicle. Furthermore, Husband's journal excerpts, video recording, and testimony clearly show that it was his intent that the 4-Runner be used as the parties' family vehicle. Given that Wife was the primary caretaker of the parties' child, she was the primary driver of the vehicle. Accordingly, we conclude that, while Husband entered the marriage with the 4-Runner as his separate property, the vehicle was transmuted into marital property through Husband's actions and stated intent. Thus, we reverse the trial court's conclusion that the 4-Runner was Wife's separate property, and we conclude that it was marital property.

## 2. Award of 4-Runner to Wife

Although the trial court erred in finding that the 4-Runner was Wife's separate property, we conclude that it was not error for the trial court to ultimately award her the vehicle. Tennessee Code Annotated section 36-4-121(c) requires courts to consider "all relevant factors" including those outlined in the statute when equitably dividing the marital estate. Relevant here, factor twelve requires a court to consider "other factors as are necessary to consider the equities between the parties." Tenn. Code Ann. § 36-4-121(c)(12). Given the short tenure of this marriage, the marital estate essentially consisted of the 4-Runner, the debt on the vehicle, and some credit card debt. As discussed above, Husband purchased the vehicle for Wife to use as the "family vehicle," and the record shows that this was how the parties treated the vehicle. The record also shows that Wife sold her personal vehicle shortly after Husband purchased the 4-Runner, but Husband maintained his personal vehicle separate from the 4-Runner. If the trial court had awarded Husband the 4-Runner, he would have possessed two cars, but Wife would have been without a mode of transportation for herself and the parties' child. Given the foregoing circumstances, it was equitable for the trial court to award Wife the 4-Runner, and we affirm this award.

## 3. Remaining Debt of 4-Runner

Having clarified the classification and division of the 4-Runner, we turn to whether the trial court erred in dividing the remaining debt on the vehicle between the parties. The record shows that the monthly debt obligation on the 4-Runner is $900.00.[4] When

---

[4] For completeness we note that, in the final decree, the trial court found that the monthly payment on the vehicle was $806.76. It is unclear how the trial court came to this number as Husband's testimony was that

apportioning marital debt, courts consider four factors: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt. *See **Alford v. Alford***, 120 S.W.3d 810, 814 (Tenn. 2003); Tenn. Code Ann. § 36-4-121(i)(1).[5] We have already discussed the first three elements, to-wit: (1) the purpose of the debt was to provide a family vehicle for Wife to drive the parties' child; (2) Husband incurred the debt but used marital funds to repay it; and (3) both Husband and Wife benefitted from incurring the debt as the vehicle provided a reliable family vehicle. Concerning the fourth element, *i.e.,* which party is best able to repay the debt, the trial court found Wife's gross income to be $3,900.00 per month and Husband's to be $13,369.79. Neither party designated the trial court's factual findings concerning income as an issue on appeal; accordingly, we rely on these numbers in our analysis. Based on the foregoing, we cannot conclude that the trial court erred when it divided the remaining debt on the 4-Runner between the parties. Because the vehicle is Wife's primary mode of transportation and because she will receive title to it when the debt is satisfied, it is not inequitable for her to contribute to paying the debt on the vehicle. Because Husband originally purchased the vehicle so that Wife could have a reliable mode of transportation and because Husband's income is more than three times Wife's income, it is not inequitable for him to contribute to paying this debt. Indeed, given her income, Wife is not in a position to pay the entire monthly payment of $900.00. Accordingly, we affirm the trial court's equitable division of the marital debt associated with the 4-Runner.

## B. Wife's Attorney's Fees

In Husband's statement of the issue on appeal, he briefly mentions the award of Wife's attorney's fees at trial. Accordingly, we address it below. On appeal, Wife raises the issue of whether she should be awarded attorney's fees incurred in this appeal. We consider each award in turn.

## 1. Attorney's Fees at Trial

As the Tennessee Supreme Court has explained,

[i]t is well-settled that an award of attorney's fees in a divorce case constitutes alimony *in solido*. *See* Tenn. Code Ann. § 36-5-121(h)(1) ("alimony *in solido* may include attorney fees, where appropriate"); ***Herrera v. Herrera***, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). . . . As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse

---

the 4-Runner's monthly payment was $900.00. Regardless, Husband does not seem to dispute the monthly obligation, only that he is required to pay a portion of it.

[5] In March 2022, the Tennessee Legislature codified the ***Alford*** factors in the statute.

with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. ***Umstot v. Umstot***, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997). Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *see* ***Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), or the spouse would be required to deplete his or her resources in order to pay them, *see* ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony. *See* ***id.*** at 185.

***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 113 (Tenn. 2011). Trial courts have broad discretion in awarding spousal support, ***Bratton v. Bratton***, 136 S.W.3d 595, 605 (Tenn. 2004), and this Court is "disinclined to second-guess a trial judge's spousal support decision" absent a trial court's abuse of discretion. ***Kinard v. Kinard***, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). A trial court abuses its discretion when it applies the incorrect legal standard and reaches a decision that is clearly unreasonable. ***Bogan v. Bogan***, 60 S.W.3d 721, 733 (Tenn. 2001) (citing ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

Turning to the final decree, the trial court awarded Wife $4,387.50, an amount equal to one-half of the attorney's fees she incurred in litigating the divorce. On appeal, Husband argues that the trial court failed to explain why it awarded Wife attorney's fees "except by finding that [Husband] was responsible for the divorce." In the final decree, the trial court stated that, in awarding Wife's attorney's fees, it considered the relative earning capacity of each party, the current income of each party, "and the fact that the [c]ourt [was] awarding [Wife] a divorce on the grounds of [i]nappropriate [m]arital [c]onduct".[6] In doing so, the trial court considered two of the factors outlined in Tennessee Code Annotated section 36-5-121(i): (1) the relative earning capacity of the parties and the financial resources of each party; and (2) the relative fault of the parties. Tenn. Code Ann. § 36-5-121(i)(1), (11). Thus, the trial court applied the correct legal standard when it analyzed whether it should award Wife attorney's fees. Furthermore, as discussed *supra*, the record shows that Wife's income was considerably less than Husband's. Although Wife testified that she earned a greater income while living in Hawaii, she explained that she was forced to take a demotion

---

[6] In a footnote to his appellate brief, Husband argues that the trial court erred when it granted Wife a divorce based on inappropriate marital conduct for marital infidelity. Husband argues that the "marital infidelity" portion of the ground is "uninvited and unnecessary *dicta* [that] should be stricken from the Final Decree." (Emphasis in original). As noted above, Husband raised only one issue for this Court's review on appeal, and the issue did not concern the ground on which the trial court awarded Wife a divorce. Accordingly, Husband has waived this issue, and we do not address it. *See* ***Hawkins v. Hart***, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001) ("An issue not included [in the Statement of the Issues] is not properly before the Court of Appeals."); Tenn. R. App. P. 27(a)(4).

within the company when she moved to Tennessee. Wife is also the primary caretaker for the parties' child, and she testified that her schedule is inconsistent due to this role. Because Wife is paid on an hourly basis, her income is often affected by the child's needs and schedule. Wife also testified that Husband's affair in August 2021 as well as his unfulfilled promises led to the divorce. From the totality of the circumstances, we conclude that the trial court did not abuse its discretion in awarding Wife one-half of her attorney's fees as alimony *in solido*.

## 2. Attorney's Fees on Appeal

Wife asks this Court to award her attorney's fees incurred on appeal. In Tennessee, "litigants are responsible for their own attorney's fees absent a statute or agreement between the parties providing otherwise." ***Darvarmanesh v. Gharacholou***, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005) (citing ***State v. Brown & Williamson Tobacco Corp.***, 18 S.W.3d 186, 194 (Tenn. 2000)). However, Tennessee Code Annotated section 36-5-103(c) allows this Court, in its discretion, to award attorney's fees in any proceeding "to enforce alter, change, or modify any decree of alimony[.]" Tenn. Code Ann. § 36-5-103(c); *see also* ***Archer v. Archer***, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). Because this appeal involves Husband's challenge to the trial court's award of alimony *in solido*, *i.e.,* Wife's trial attorney's fees, discussed *supra*, this Court has discretion to award Wife appellate attorney's fees under the foregoing statute. "In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case." ***In re C.W.***, 420 S.W.3d 13, 22 (Tenn. Ct. App. 2013) (citing ***Darvarmanesh***, 2005 WL 1684050, at *16). Because we have affirmed the trial court's award of Wife's attorney's fees at trial, Wife is the prevailing party on the issue of her alimony award. Given Wife's success on this issue and in view of the income disparity between the parties, we conclude that Wife is entitled to an award of attorney's fees on appeal. As such, we grant Wife's request for appellate attorney's fees.

## V. Conclusion

For the foregoing reasons, the trial court's order is reversed in part and affirmed in part. Specifically, we reverse the trial court's conclusion that the 4-Runner was a gift to Wife and her separate property, and we conclude that it was transmuted into marital property. We affirm: (1) the trial court's award of the 4-Runner to Wife; (2) the trial court's conclusion that the remaining debt on the 4-Runner was marital debt; (3) the trial court's equitable division of the remaining debt on the vehicle; and (4) Wife's attorney's fees at trial. We grant Wife's request for appellate attorney's fees. The case is remanded to the trial court for such further proceedings as are necessary and consistent with this opinion, including, but not limited to, the calculation of Wife's attorney's fees and expenses incurred in defending this appeal, and entry of judgment on same. Costs of the appeal are

assessed to the Appellant, Jarone Amarino, for all of which execution may issue if necessary.

                                            _s/ Kenny Armstrong_
                                        KENNY ARMSTRONG, JUDGE