IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2018 Session

## ROBIN LYNN BOLT v. MICHAEL DAVID BOLT

Appeal from the Circuit Court for Monroe County
No. V16278S     J. Michael Sharp, Judge

No. E2017-02357-COA-R3-CV

This appeal arose from a divorce action filed by the wife. Prior to the onset of the litigation, the parties had been married for eighteen years with one minor child born during the marriage. On November 2, 2017, the trial court granted the divorce; divided the marital property according to the wife's proposed property distribution; awarded to the wife alimony *in futuro* in the amount of $1,100 per month; awarded to the wife half of her attorney's fees as alimony *in solido*; and adopted the husband's proposed permanent parenting plan. Although the husband's permanent parenting plan contained a child support calculation based on monthly income estimates, the court ordered the child support payments to be calculated using the average of the parties' respective incomes from the previous three years. The husband has appealed. Because it is unclear whether the trial court classified the real property upon which the marital home is located as marital property or the wife's separate property prior to awarding her its value and because we determine that the order appealed from contains an internal inconsistency with respect to the amount of child support awarded, we vacate the trial court's distribution of marital property and its awards of alimony and child support. We remand for the trial court to clarify its property classification and resolve the inconsistency concerning child support prior to rendering judgment regarding an award of alimony. The trial court's judgment granting the divorce is otherwise affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Robert L. Jolley, Jr., and Megan A. Swain, Knoxville, Tennessee, for the appellant, Michael David Bolt.

Steven B. Ward, Madisonville, Tennessee, for the appellee, Robin Lynn Bolt.

**OPINION**

I. Factual and Procedural Background

Robin Lynn Bolt ("Wife") and Michael David Bolt ("Husband") were married on July 18, 1998, and had one child during the marriage, who was sixteen years old at the time of trial in 2017. On November 21, 2016, Wife filed a complaint for divorce in the Monroe County Circuit Court ("trial court") on the grounds of irreconcilable differences or, in the alternative, inappropriate marital conduct. *See* Tenn. Code Ann. § 36-4-101(11), (14) (2017). In her complaint, Wife requested, *inter alia*, an equitable distribution of marital assets and debt and awards of "suitable alimony *in futuro*, alimony *in solido*, temporary alimony, rehabilitative alimony, permanent alimony, attorney's fees and suit expenses[.]"

On December 2, 2016, Husband filed an answer to the divorce complaint, admitting irreconcilable differences and denying inappropriate marital conduct. In an order entered on February 10, 2017, the trial court directed that mediation be scheduled. The parties accordingly participated in mediation, which ultimately did not result in a settlement. On July 13, 2017, Husband filed a counter-complaint for divorce, alleging the ground of irreconcilable differences or, in the alternative, grounds of inappropriate marital conduct and indignities to Husband's person. *See* Tenn. Code Ann. § 36-4-101(11), (12), (14). Husband concomitantly filed a proposed permanent parenting plan wherein Wife was designated as the primary residential parent with 251 days per year of residential co-parenting time. Husband's proposed permanent parenting plan also incorporated a child support worksheet in which he listed Wife's gross monthly income at $3,500.00 and Husband's gross monthly income at $8,290.05, calculating Husband's monthly child support payments to be $748.00.

The trial court conducted a bench trial over the course of two days on September 29, 2017, and October 5, 2017. During the trial, the court considered testimony from Husband, Wife, the parties' minor child, Wife's adult daughter from a previous marriage, Husband's mother, and two women whom Wife alleged to have been in extramarital relationships with Husband. As part of the proof, the parties presented self-reported estimates of their income and expenses, separate estimates of the value of marital assets, and separate proposals for the division of marital assets and debt. At the conclusion of the trial, the trial court took the matter under advisement, affording the parties four or five days to reach an agreement regarding the issues prior to the issuance of the court order.

On November 2, 2017, the trial court entered a final order listing its findings of fact and addressing in turn the permanent parenting plan, the grounds for divorce, the equitable division of marital property, an award of alimony to Wife, attorney's fees, and court costs. Pertinent to this appeal, the trial court found that Wife, who was fifty-two years old at the time, had an annual income ranging from $44,000.00 to $45,000.00 and that Husband, who was forty-seven years of age, had "averaged well in excess of $90,000.00 for the last three years." The trial court further found that both parties should be able "to work full time in their current or better positions for the foreseeable future," although the court expressed concerns regarding Wife's physical health.

The trial court granted a divorce to Wife based on the ground of Husband's inappropriate marital conduct.[1] The trial court adopted Husband's proposed permanent parenting plan, specifically finding in pertinent part:

> The court finds [Husband's] proposed permanent parenting plan to be in the best interest of the child and the court adopts [Husband's] proposed permanent parenting plan as the permanent parenting plan going forward.
>
> However, with regard to the child support calculation, the court finds that the parties shall use the average of their previous three years income as the income figure to be used for calculating child support. The court finds that the parties' gross income average during the last three years is an accurate reflection of their actual income earning ability as well as an accurate reflection of their real income.

(Internal citations to record omitted.) The permanent parenting plan, entered on November 7, 2017, listed the monthly child support as $748.00 per month, as was previously calculated in Husband's proposed permanent parenting plan. However, the permanent parenting plan did not include an updated child support worksheet or provide any other indication as to whether the court had adjusted the child support calculation to reflect the parties' incomes as averaged from the past three years as ordered.

As to the division of marital property, the trial court made what it determined to be an equitable division of the marital estate, which included the parties' marital residence, a modified double-wide mobile home, located on real property purchased by Wife prior to

---

[1] Although Husband contends that the trial court erred in its determination regarding grounds for divorce, Husband did not include divorce grounds within his statement of the issues on appeal. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."); *Owen v. Long Tire, LLC*, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at *4 (Tenn. Ct. App. Dec. 22, 2011) ("The requirement of a statement of the issues raised on appeal is no mere technicality."). Therefore, we will not extend our review to the trial court's finding of inappropriate marital conduct.

the marriage. The trial court directed that the marital residence should be appraised and that Wife would be entitled to the current value of the underlying real property because she had purchased that property "out of her own funds." The trial court further determined that the marital home and any fixtures to the real property should be valued and that the parties were entitled to an equal portion of that value. As an equitable division, the trial court ordered that after the appraisal of the property, "the parties shall have the right to either (a) bid on the house individually, with the highest bidder purchasing the home, or (b) the parties may choose to list the house for sale and the proceeds shall be used to pay the marital debt . . . with any remaining balance to be split equally between the parties."

With respect to spousal support, the trial court awarded to Wife $1,100.00 per month in the form of alimony *in futuro* and half of her attorney's fees as alimony *in solido*. The court made the following findings in pertinent part:

> The relative earning capacity of [Wife] has been and, in the court's opinion, will remain less than half of what the earning capacity of [Husband] has been and is. Because [Husband's] earning capacity is so much greater, and his income has been so much greater, then his profit sharing and/or retirement plans or pension plans are far greater than [Wife's].

> [Wife], prior to taking her present job, went back to school and received the appropriate training to become a radiology technician. Given her age and the length of time that she has been in her job, the court finds that it is not reasonable to assume that she can go back to school to the point of securing such an education and/or training to improve her earning capacity to a level anywhere near what [Husband] has been earning the previous three years, and actually more than the previous three years. . . . given the fact that [Wife] is about five years older than [Husband], and given the fact that her physical health is at least of concern to the court, and given the great disparity of their current incomes and their income earning potential, the court finds that alimony is called for in this case.

> * * *

> Both parties have essentially equal separate assets, and based upon the court's division of the marital estate, each will leave this marriage with similar assets and liabilities.

> * * *

4

Ultimately, the court finds that [Wife] is the economically disadvantaged spouse, and has a definite need for alimony. The court finds that it is not likely that [Wife] could do any additional educational training, or take any reasonable steps to substantially increase her earning capacity to a level anywhere near the earning capacity already existing for [Husband], based upon the history of his income. Additionally, the court finds, based upon the history of [Husband's] annual income, that [Husband] has the ability to pay alimony.

On December 1, 2017, Husband filed a notice of appeal. Ten days later, Wife filed a Motion to Enforce and to Calculate Child Support in the trial court, alleging that the trial court's November 2, 2017 order was not a final order because the court had not yet calculated child support pursuant to the Tennessee child support guidelines. Upon a review of the trial court's order, we determine that because the trial court's judgment included an order of child support, it is a final order vesting this Court with subject matter jurisdiction. *See* Tenn. R. App. P. 3(a).

In this Court, Husband filed a "Motion to Consider Post-Judgment Facts and/or to Supplement the Record" with a child support worksheet and an appraisal of the marital residence. Although Husband states in his brief that "the child support worksheet [was] subsequently ordered by the trial court," no court order was presented to this Court with the child support amount in the worksheet. This Court denied the motion, pursuant to Tennessee Rule of Appellate Procedure 14, without prejudice to Husband's ability to seek supplementation of the record with the trial court if the documents were made part of the record below. Husband did not further pursue supplementation of the record.

## II. Issues Presented

Husband presents three issues on appeal, which we have restated slightly as follows:

1. Whether the trial court erred by determining that awards to Wife of alimony *in futuro* and alimony *in solido* were appropriate prior to calculating child support and valuing the marital estate.

2. Whether the trial court erred by awarding alimony *in futuro* and alimony *in solido* to Wife.

5

3.    Whether the trial court erred by awarding the value of the real property on which the marital residence was located to Wife as her separate property.

## III. Standard of Review

In a case involving issues of spousal support, our Supreme Court has elucidated the applicable standard of review as follows:

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew* [*v. Burlew*], 40 S.W.3d [465,] 470 [(Tenn. 2004)]; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (internal footnotes omitted).

6

Additionally, our Supreme Court has explained the applicable standard of appellate review in a case involving the proper classification and distribution of assets incident to a divorce as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Questions related to the classification of assets as marital or separate are questions of fact. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005).

Furthermore, as this Court has previously explained:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an *equitable* division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at \*3 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted). *See Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (explaining that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

## IV. Awards of Alimony

Husband contends that the trial court erred in its awards of alimony to Wife, arguing that the facts in the record are contrary to the trial court's findings on the issue. Husband asserts that the trial court did not properly consider the issue of alimony because it had not first calculated child support, which has a material effect on both Wife's need and Husband's ability to pay. Upon a thorough review of the record and relevant case law, and upon discerning the existence of an internal inconsistency in the trial court's award of child support, we conclude that the trial court's determination of alimony prior to calculating child support was premature.

Tennessee law recognizes four types of spousal support: (1) alimony *in futuro*, also known as periodic alimony; (2) alimony *in solido*, also known as lump-sum alimony; (3) rehabilitative alimony; and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d) (2017); *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012). Our statutory scheme indicates a legislative preference favoring short-term spousal support, rehabilitative and transitional alimony, over the long-term types of support, alimony *in futuro* and alimony *in solido*. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Mayfield*, 395 S.W.3d at 115; *Riggs v. Riggs*, 250 S.W.3d 453, 456 (Tenn. Ct. App. 2007).

It is well settled that "trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award." *Mayfield*, 395 S.W.3d at 114; *see also Fickle v. Fickle*, 287 S.W.3d 723, 736 (Tenn. Ct. App. 2008). When determining whether spousal support is needed and the appropriate nature of the support, Tennessee law instructs trial courts to look first to whether a spouse is economically disadvantaged relative to the other spouse, then to whether rehabilitation is feasible. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3). As Tennessee Code Annotated § 36-5-121(d)(2) explains:

> To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living

expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tennessee Code Annotated § 36-5-121(i) (2017) provides the following relevant statutory factors for a trial court to consider:

(1)     The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2)     The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3)     The duration of the marriage;

(4)     The age and mental condition of each party;

(5)     The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)     The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)     The separate assets of each party, both real and personal, tangible and intangible;

(8)     The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)     The standard of living of the parties established during the marriage;

(10)    The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)    The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

"Although each of these factors must be considered when relevant to the parties' circumstances, 'the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.'" *Gonsewski*, 350 S.W.3d at 110 (quoting *Riggs*, 250 S.W.3d at 457). "Child support decisions should precede decisions about spousal support because a spouse's ability to pay spousal support may be directly and significantly influenced by the amount of child support he or she has been ordered to pay." *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998).

Although the trial court stated in its order that it would adopt Husband's proposed permanent parenting plan, the court specified: "However, with regard to the child support calculation, the court finds that the parties shall use the average of their previous three years income as the income figure to be used for calculating child support." The trial court's specification of income averaging for calculation of child support subsequent to the court's adoption of Husband's permanent parenting plan ostensibly indicates that the court intended to adopt a different amount of monthly child support than the amount Husband had originally proposed. However, the permanent parenting plan entered by the trial court includes monthly child support payments in the amount of $748.00, which is identical to Husband's proposed monthly child support amount in the permanent parenting plan filed with his counter-complaint.

Certainly, it is possible that the trial court's calculations averaging the parties' respective incomes from the past three years resulted in an amount of monthly child support that was coincidentally identical to Husband's proposed child support payments. Nonetheless, without a child support worksheet or other documentation indicating how the trial court arrived at $748.00 as the monthly child support payment, we cannot discern whether this amount accurately reflects the court's order. We additionally note that Wife in her post-judgment motion had argued that child support had not yet been calculated, indicating some question resulting from the trial court's order.

We therefore determine that the trial court's order and approved permanent parenting plan contain an apparent inconsistency as to the specific amount of the monthly child support payment. Moreover, the amount of child support awarded materially affects whether spousal support is appropriate and the amount of spousal support awarded. *See Anderton*, 988 S.W.2d at 679. Child support thus being a fundamental factor for decisions regarding spousal support, we vacate the trial court's order awarding child support and alimony to Wife. We also remand this matter to the trial court for the

purpose of resolving the inconsistency in its order concerning child support prior to determining the amount and nature of alimony that is appropriate in this case.

## V.  Marital Property Division

Husband additionally contends that the trial court erred by determining that the real property on which the marital residence was situated was Wife's separate property and not marital property to be equitably divided.  Husband does not dispute that prior to the marriage, Wife purchased the unimproved real property, used title to the real property to secure the loan obligation on the mobile home, and placed the mobile home on the real property.  Following the marriage, both parties contributed to payments toward the loan for the marital home.  The parties also added improvements to the structure, including the construction of a porch and two additional bedrooms, which have rendered what had been a mobile home indisputably immobile.  Husband's argument centers on the proposition that any increase to the value of the land based on the parties' contribution during the marriage would be marital property.  *See* Tenn. Code Ann. § 36-4-121(b)(1)(B)(i) (2017).

When equitably distributing the marital property, the trial court should first identify all property interests at issue in the divorce proceeding.  *See Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007).  After identifying the property interests, the trial court should then classify the property as either marital or separate property.  *Id.*  It is well settled that a trial court must identify all assets of the parties in divorce proceedings as either separate or marital property prior to equitably distributing the marital property.  *See Keyt*, 244 S.W.3d at 328; *McHugh*, 2010 WL 1526140, at *3.  The classification of the property "is an important threshold matter because courts do not have the authority to make a distribution of separate property."  *Summer v. Summer*, 296 S.W.3d 57, 60 (Tenn. Ct. App. 2008).

Upon our thorough review of the trial court's factual findings and legal conclusions, we determine that the trial court's final judgment is unclear regarding the court's classification of the real property on which the marital home is located.  Regarding the unimproved real property and the marital residence, the trial court found as follows in pertinent part:

> [Wife] purchased the real property, upon which the parties' marital residence sits, prior to the marriage.  [Wife] paid for the property out of her own personal funds prior to the marriage.  [Wife] paid $9,500.00 for the property, based upon the sworn affidavit shown on the Deed.  [Wife] purchased the double wide mobile home that became the parties['] marital residence prior to the parties['] marriage.  [Wife] used her real property as collateral for the loan for the double wide mobile home.  [Wife] began

paying for the double wide mobile home out of her own personal income prior to the marriage. However, the parties married soon after the purchase of the double wide mobile home, and both parties have contributed to the payment of the double wide mobile home since the date of their marriage. Since the date of the marriage, both parties also contributed to the payment of a home equity line of credit (HELOC) that was used to build onto the double wide mobile home on at least two occasions, once to add on two bedrooms, and another time to add a porch and/or sun room. The sun room remains unfinished. Both parties agree that the bedroom addition, as well as possibly the other addition, were done by family and/or friends, and may not be completely structurally sound and/or correct as it relates to the construction. However, there is no question that the rooms have added to the overall space and livability of the home.

* * *

With regard to the parties' marital residence, the court finds that the marital residence should be appraised by a qualified/certified real estate appraiser, and the parties shall divide the proceeds as follows: [Wife] is entitled to the value of the real property since she bought and paid for the real property out of her own funds and is entitled to whatever the current value of the real property alone is. Otherwise, the house and any fixtures to the real property shall be valued and the parties are entitled to an equal share of the remaining value based upon a current real estate appraisal. The court finds it necessary to do this, due to the fact that both parties' proposed values are so vastly different. . . . Once the property value is determined, then the parties shall have the right to either (a) bid on the house individually, with the highest bidder purchasing the home, or (b) the parties may choose to list the house for sale and the proceeds shall be used to pay the marital debt . . . with any remaining balance to be split equally between the parties.

(Internal citations to record omitted.)

Determining that Wife was entitled to "whatever the current value of the real property alone is," the trial court divided the value of the marital residence and any fixtures thereto equally between Wife and Husband. We discern two possible interpretations of this division. First, the trial court may have awarded the real property on which the marital home was located to Wife as her separate property. Alternatively, the trial court may have awarded the value of the real property to Wife as part of an equitable distribution of the marital property, taking into consideration the fact that she

12

purchased the land prior to the marriage. *See Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010) (holding that an equitable division of a marital estate is not necessarily an equal division). Following a thorough review of the record, we conclude that the trial court's classification of the real property is unclear, which precludes our review of whether the trial court erred by awarding the value of the real property to Wife in its judgment. Accordingly, we vacate the trial court's division of the marital estate and remand for a proper classification of the real property at issue prior to the trial court's equitably dividing the marital estate.

## VI. Conclusion

For the foregoing reasons, we vacate the trial court's order granting awards of child support and alimony to Wife and equitably dividing the marital estate. We remand to the trial court to resolve the inconsistency with respect to its award of child support to Wife and to specifically classify the real property prior to equitably dividing the marital estate, setting child support, and awarding alimony. We affirm the trial court's judgment in all other respects. Costs on appeal are taxed one-half to the appellant, Michael David Bolt, and one-half to the appellee, Robin Lynn Bolt.

_____
THOMAS R. FRIERSON, II, JUDGE

13